IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| RICKY L. CHESTER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:06-CV-277 |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Now before the court is defendant's motion for summary judgment [doc. 44]. Plaintiff has filed a response [doc. 52], to which defendant has submitted a reply [doc. 56]. For the reasons that follow, defendant's motion for summary judgment will be denied.

Also before the court is plaintiff's motion for clarification [doc. 55] of the court's May 12, 2008 order [doc. 53]. That motion will be granted in part and denied in part.

I.

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant may discharge its burden by demonstrating that the non-moving party has

failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *See id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *See id.* at 251-52.

II.

*Background*

Plaintiff Ricky L. Chester's first amended complaint pertains to defendant insurer's denial of "his claim for water damage to his residence resulting from water penetration through the Exterior Insulation and Finish System ("EIFS"), a form of synthetic stucco, that had been applied to the exterior of his house." The complaint mentions damage noticed in January 2002 and March 2005, contending that each event "as a result of water intrusion through the EIFS exterior was covered under Plaintiff's State Farm insurance

2

policy." By order dated November 21, 2006, the court partially dismissed the original complaint "pertaining to January 2002 water damage" due to plaintiff's admitted failure to submit a signed, sworn proof of loss as required by the policy.

III.

*Analysis*

A. Summary Judgment

In support of its motion, defendant has submitted the affidavit of general contractor Rayford Smith, who inspected plaintiff's home in February 2008. Mr. Smith concluded,

> The failure to properly remediate the damaged wall and substrate in January of 2002 ultimately caused the delamination of the EIFS from the substrate and the mold and mildew growth in the interior of the Residence, which manifested itself in March of 2005.
>
> Based upon my inspection and testing as well as my independent review of the materials identified above, I can conclude to a reasonable degree of certainty that the damages to the Residence identified by Mr. Chester in March of 2005 were not a result of a separate water event that occurred at that time but, rather, were a continuation of the compromised "Barrier" EIFS system that Mr. Chester identified in or around January of 2002.

[Doc. 44, ex. A, ¶¶ 14-15]. Citing Mr. Smith's opinion, defendant contends that the remainder of plaintiff's complaint should be dismissed as untimely. Defendant specifically argues that

3

expert testimony proffered by State Farm in support of its Motion clearly establishes that the water damage identified by Plaintiff in March of 2005 was not, in fact, a result of a separate water event that occurred at that time but, rather, was a continuation of the January 2002 water penetration. Having already determined that any and all damages pertaining to the January 2002 occurrence are barred as a result of Plaintiff's failure to comply with the Policy's sixty day notice provision, the law of the case doctrine dictates that this Court should now dismiss the remainder of Plaintiff's claims against State Farm in their entirety.

[Doc. 45, p.2].

In response, plaintiff has submitted the affidavit of engineer Ronald Wright, who also inspected plaintiff's home in February 2008. In material part, Mr. Wright concluded,

> The Plaintiff observed damages to the interiors in 2002. Shortly thereafter, the Plaintiff performed repairs that either stopped or slowed further water intrusion behind the EIFS sufficiently to not have any further occurrences to the interior after this time period. However, the Plaintiff did observe new occurrences of water intrusion to the interior in 2005 and found visible evidence on the exterior of the EIFS separating from the sheathing due to severe water damage that was hidden behind the EIFS.
>
> The time period between observations by the Plaintiff in 2002 and 2005 is not surprising to me. Due to the inherent design defect and other deficiencies of EIFS, water intrusion was and would have continued behind the EIFS regardless of any actions by the Plaintiff. . . .
>
> . . .
>
> Based on my observations of the Plaintiff's residence, it is my opinion that occasions for water intrusion to occur behind the EIFS most likely began soon after construction of the residence was completed. . . . [Several observed] areas were and will continue to be locations on the Plaintiff's residence for further occasions of water intrusion to occur due to the construction and inherent defect of EIFS as weather events occur. . . .

[Doc. 52, ex. A, ¶¶ 11-12, 14].

The court notes that defendant's motion is based on a faulty premise. Defendant seeks to tie 2005 and 2002 together as a single "occurrence." "Occurrence" is a defined term under the policy:

> "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
>
> a. bodily injury; or
>
> b. property damage;
>
> during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

[Doc. 1, ex. 1, p.2]. The word "occurrence" and its related limitations are found, however, only in Section II of the policy, pertaining solely to Liability Coverage. [Doc. 1, ex. 1, p.15]. It is policy Section I that is relevant to the present dispute, and that section frames residential coverage in terms of the undefined concepts of "loss" and "damage" - not "occurrence."

The Wright affidavit raises genuine issues of material fact as to whether the damage first noticed in 2005 was a continuation of the damage noticed in 2002. Mr. Wright raises genuine material questions as to, for example, the point of water intrusion, the time when the damage occurred, and the effectiveness of plaintiff's repairs. The relevant coverage concepts are "loss" and "damage," and defendant does not endeavor to explain why coverage should be excluded under those concepts in light of the genuine material issues presently in dispute. Defendant's summary judgment motion must therefore be denied.

5

## B. Motion for Clarification

Plaintiff seeks clarification of the status of his Tennessee Consumer Protection Act ("TCPA") claims. The original complaint sought money damages, both individually and on behalf of the purported class, for violation of the TCPA. The amended complaint now seeks TCPA money damages only for plaintiff individually, but also seeks TCPA declaratory and injunctive relief on behalf of both plaintiff and the purported class. Both versions of the complaint have sought attorney fees under the TCPA for both plaintiff and the class.

The parties correctly agree that a class action lawsuit seeking money damages cannot be maintained under the TCPA. *See Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 304 (Tenn. 2008) ("we hold that class certification is unavailable under the TCPA"). Plaintiff argues, however, that *Walker* does not apply to class suits seeking only injunctive and/or declaratory relief. The court does not share plaintiff's reading of that case.

In *Walker*, the plaintiff sought money damages individually and on behalf of the purported class.[1] The *Walker* court's analysis focused first on the TCPA money damages provision, which provides that "[a]ny *person* who suffers an ascertainable loss . . . may bring an action *individually* to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1) (emphasis added). The present plaintiff argues that because the TCPA declaratory judgment provision does not also employ the word "individually," that *Walker*'s holding must be limited to suits for money damages. *See* Tenn. Code Ann. § 47-18-109(b) ("*anyone* affected

---

[1] It is unclear whether Walker also sought declaratory or injunctive relief under the TCPA.

6

by a violation of this part may bring an action to obtain a declaratory judgment . . . and to enjoin . . . .") (emphasis added).

Although the court recognizes the inconsistency between §§ 109(a)(1) and 109(b), plaintiff does not articulate why the Tennessee legislature would authorize class actions in one type of suit but not the other. Moreover, in reaching its broad and unambiguous "hold[ing] that class certification is unavailable under the TCPA," the Tennessee Supreme Court considered and discussed the TCPA as a whole. That court noted that "the TCPA uses the singular terms 'individual' and 'person' throughout." *Walker*, 249 S.W.3d at 309 (citations omitted). The undersigned finds no meaningful distinction between the word "anyone," as used in § 109(b), and the word "person" as used throughout the TCPA.

The *Walker* court also observed, "[a]s a point of contrast, . . . that several other states' consumer protection legislation *specifically authorize* class actions," whereas Tennessee's does not. *Walker*, 249 S.W.3d at 310 (emphasis in original). The *Walker* court went on to note, "important to the protection of *classes* of consumers, the Attorney General and the Division of Consumer Affairs of the Tennessee Department of Commerce and Insurance can investigate and prosecute violations of the TCPA" under §§ 47-18-106-108, and those provisions provide for declaratory and injunctive relief. *Walker*, 249 S.W.3d at 311 (emphasis in original). "Read together, these provisions demonstrate that the legislature provided several clearly articulated avenues by which the TCPA can fully protect and benefit consumers." *Id.*

7

Although *Walker* does not specifically mention § 109(b), for the reasons cited above the undersigned concludes that the Supreme Court of Tennessee fully meant what it said. That court "granted . . . permission to appeal . . . to determine whether a class action may be certified in a claim brought under the [TCPA]" and "h[e]ld that class certification is unavailable . . . ." *Walker*, 249 S.W.3d at 304. Reading *Walker* and the TCPA in their entireties, this court must conclude that the intent of Tennessee's Supreme Court and legislature was to prohibit *all* class actions under the TCPA.

Therefore, to the extent that the present plaintiff seeks to bring any form of class action under the TCPA, those claims are dismissed. The court recognizes and clarifies, however, that the amended complaint also contains TCPA claims for individual relief. Those individual claims remain active in this case for the time being.

An order consistent with this opinion will be entered.

ENTER:

       s/ Leon Jordan
United States District Judge